C. B. HENLEY, a *feme sole*, v. THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA.

196 So. 621
En Banc
Opinion Filed May 21, 1940
Rehearing Denied June 19, 1940

*Otto C. Stegemann* and *David B. Newsom,* for Petitioner;
*Edward E. Fleming* and *Alfred E. Sapp,* for Respondent.

THOMAS, J.—The Judge of the Circuit Court of Record entered a judgment in favor of the plaintiff in a suit against the defendant to recover the money held by the latter for rents collected under a contract with the former to serve as its agent. The issues were formed by the common counts and pleas of "never was indebted as alleged" and set-off and counterclaim. It is the latter which presented the real dispute which we are asked to decide.

Two trials were conducted in the court of original jurisdiction and as many appeals prosecuted to the circuit court. It was to review a judgment of the appellate court affirming one of the trial court providing for recovery of the full amount claimed by the plaintiff, notwithstanding the pleas of set-off and counterclaim, that certiorari was sought of this Court.

The claim, of the defendant agent against the plaintiff principal, presented in the affirmative pleas, consisted of three items. One of them related to a charge for adjusting a claim against an insurance company for damage to the principal's property caused by a hurricane; the second was

a demand for payment for services rendered in supervision of the repair of the buildings damaged by the storm; and the third was a claim for commissions on rent to be paid in the future on leases executed during the existence of the agency.

We advert now to the negotiations which culminated in the relationship between the parties. The principal owned several business buildings which had been supervised by its representative, George W. Moore, a licensed real estate broker and petitioner's employer. This agent died and an officer of the respondent agreed with the petitioner that she should manage the property for the same compensation paid her predecessor, 7 per centum of gross receipts in rents. A letter was thereupon delivered to petitioner instructing her until further notice to "service our various properties in your city, making the usual rent collections, depositing same to your account and paying the operating expenses." She was instructed to mail monthly reports and checks for amounts collected by her less expenditures. No mention was made of any remuneration for adjustment of insurance claims or for making (to quote from petitioner's brief) "major repairs of hurricane damages as distinct from ordinary repairs to maintain the buildings and ordinary alterations to meet requirements of tenants."

The contract was terminated by the corporation in February, 1937.

It is significant that the money to cover the storm damage was collected and remitted by petitioner in 1935 and the repair of the property was commenced in the same year, yet no effort was made by her to obtain a commission or compensation for her services in that behalf until her employment was terminated in 1937. This circumstance together with her undertaking to make monthly remittances under a con-

tract terminable at any time and the paucity of proof that any understanding was reached for additional compensation lead us to the view that her claim for these items had no foundation.

She was employed to *service* her principal's buildings, that is, "to perform services of maintenance, supply, repair, installation, distribution, etc.," upon the property. Webster's New International Dictionary (1939). Her pay therefor was fixed by the amount of rental she collected regardless of the ease or difficulty she experienced in the process and being upon the gross receipts of her income was not affested by the costs of repairs or operating expenses from month to month, whether they were much or little. It was to her advantage to keep the property in good condition so that rents would be forthcoming.

Nothing was specified in the arrangement about extra compensation for any additional work in the event of visitation of a storm of the proportions of a hurricane and we think none was implied. This service was included in the agreement and, to repeat, her delay in making the claim indicates that she may have entertained the same thought until the relationship was severed. Her effort in receiving money which the insurance company paid and in forwarding it to her principal falls in the same category.

In view of the testimony we find no basis for her position that she should be paid a certain percentage of the uncollected and unearned rentals under leases negotiated during her employment. It is obvious that each month she was to remit the collections she had made after deducting expenses of operation and her commission of 7 per cent of the gross amount she received. We cannot follow any logical course and arrive at the decision that under the facts we have outlined she would be entitled to recovery of a com-

mission of 5 per cent on rents to be earned after her contract was ended. To take this view would mean that she was during her employment or agency receiving 7 per cent while her predecessor had been paid 5 per cent for the same services, for her contract was the same as his, and that any compensation to a successor would be in addition to 5 per cent already paid her. The evidence does not justify such an interpretation.

The circuit judge was manifestly correct.

Affirmed, and petition dismissed.

TERRELL, C. J., WHITFIELD, P. J., and CHAPMAN, J., concur.

BROWN, J., not participating.

BUFORD, J., dissents.

BUFORD, J. (dissenting).—This case is before us on certiorari to review judgment of the Circuit Court of Dade County affirming the judgments of the civil court of record.

The record shows that the Guardian Life Insurance Company of America, Respondent here, employed one C. B. Henley, a *feme sole,* to "service" certain rental property.

The record shows that prior to Miss Henley's employment one George W. Moore had serviced the property. At Moore's death The Guardian Life Insurance Company of America, through its agent McDowell, employed Miss Henley. McDowell's version of the contract was:

"I notified Miss Henley that we would be glad to take her on to manage the properties for the same compensation we paid George W. Moore. I said 5 per cent. I thought that was under the same agreement we paid Mr. Moore, 5 per cent, whereupon Miss Henley interrupted me and said Mr. Moore was paid 7 per cent. I said, 'Well, if Mr. Moore was paid 7 per cent, I will take you on at the same

compensation as paid Mr. Moore.' That was the only reference to any compensation."

Miss Henley's version of it was:

"I said I would like to have the properties, and he (McDowell) said, 'Do you think you could handle them?' and I said, 'Yes, I think I could,' and he said, 'Well, you can if you can work under the same arrangements as Mr. Moore.' So he (McDowell) dropped in the office and dictated the agreement, or whatever you want to call it."

Pursuant to the conversation referred to above, McDowell wrote Miss Henley a letter in the following language:

"February 15, 1934.

"Miss Caroline B. Henley,
"No. 41 N. E. First Avenue,
"Miami, Florida.

"Dear Miss Henley:

"Until further notice you will kindly continue to service our various properties in your city, making the usual rent collections, depositing same to your account and paying the operating expenses. You will, of course, render the usual monthly reports and check to cover as Mr. Moore has been doing for the past several years.

"Yours very truly,
"MORTGAGE DEPARTMENT
"R. McDowell, Manager."

In February, 1937, the Insurance Company discharged Miss Henley and in March they filed suit against her, claiming $1,532.05, which, as it was alleged, she had collected and retained in her possession over and above compensation due her for her services. To this suit she filed pleas and counterclaim and set-off, in which counterclaim and set-off she claimed 5 per cent commission of $20,555, the

amount of rentals to accrue after her discharge on leases consummated by her and, also claimed special compensation for her services in adjusting a claim for storm insurance damage in the sum of $4,200.00 and for her services in superintending repairs incident to storm damage.

A trial was had and, under the instructions given the jury by the court, the jury returned a verdict in favor of the defendant on her set-off and counterclaim in the sum of $35.22. When the verdict was returned the foreman of the jury made the following statement:

"Foreman: We assess that as giving her the amount of her claim, less what she said she owes them; that's what we understood."

Judgment was entered on the verdict.

Motion for new trial was presented. Thereupon the court entered an order which, *inter alia,* was:

"It Is, Therefore, Ordered, Considered and Adjudged that the verdict of the jury rendered herein on February 9, 1938, and the judgment of the court pursuant thereto, dated February 9th, 1938, be and the same is hereby vacated and set aside and declared of no force and effect; and it further appearing to the court that the plaintiff is entitled to a judgment herein in the amount of $1,532.05 less the item of $119.52, which item of $119.52 is claimed in the defendant's plea of set-off and counterclaim, which the court has heretofore found has been established by the evidence; and the court being fully advised in the premises, it is, therefore, upon consideration

"Ordered and Adjudged that judgment herein be and the same is hereby rendered in favor of the plaintiff, The Guardian Life Insurance Company of America, a New York corporation, and against the defendant, C. B. Henley, a *feme sole,* in the amount of Fourteen Hundred Twelve

Dollars and Fifty-three cents ($1,412.53), besides the costs of court herein ordered to be taxed by the clerk of this court, in the sum of $13.80, lawful money of the United States of America; and it is further CONSIDERED, ORDERED AND ADJUDGED that the plaintiff The Guardian Life Insurance Company of America, a New York corporation, do have and recover of and from the defendant, C. B. Henley, a *feme sole,* the sum of $1,412.53, and the costs of this suit taxed at $13.80, for which let execution issue."

Writ of error was taken to review the judgment in the circuit court. There the defendant in error confessed errors and the judgment was reversed.

A new trial was had which resulted in a verdict for the plaintiff and assessed damages at $1,724.82. To this judgment writ of error was taken but before writ of error was disposed of in the circuit court another trial was had in the civil court of record which resulted in a directed verdict for the plaintiff in the same amount as the second verdict.

To judgment on this verdict writ of error was taken. Thereafter, the circuit court affirmed the second and third judgments. These are the judgments which are before us on certiorari granted.

The defendant in the court below, petitioner here, contends that she should have had credit for the value of her services not contemplated by the contract incident to adjusting the $4,200.00 insurance item, superintending the repairs of the building and the commission on rents to accrue under the lease contracts which she negotiated and which accrued after her discharge and that because of the fact that the court excluded the proffered testimony to show the value of these items of service there was a departure from the essential requirements of the law.

There was no conflict in the evidence to the effect that

the agreement was that Miss Henley should continue to service the various properties in Miami belonging to the life insurance company by leasing the property, collecting rents and remitting to the owner the balance of collections, less 7 per cent commission and the cost of operating.

Our construction of the contract is that the matter of insurance adjustment and superintending of repairs and reconstruction such as were required after the storm damage, were services not in contemplation in the contract between the parties and that, therefore, the defendant was entitled to a quantum meruit on her pleas and set-off and counterclaim for the reasonable value of such services.

It will be observed that the contract calls for a gross payment of 7 per cent on the gross revenue from the property; that there was no separation of the items of leasing and collecting. Therefore, that contract applied to the monies received by the defendant pursuant to leases and collections, whether the lease was effectuated by her after the contract or was in force at the time of the contract, and she was not entitled to compensation based on a commission on the amount of the rent which would accrue after her discharge under a lease effectuated by her and which continued to run after her discharge.

It, therefore, follows that the trial court committed error in excluding evidence as to the value of the services of the defendant for effectuating the adjustment of the storm insurance claim and excluding evidence of the value of the services of the defendant in superintending the repairs rendered necessary by reason of storm damage.

For the reasons stated, I think the judgments of the circuit court should be quashed and the cause remanded, with directions that judgments be entered reversing the judgments of the civil court of record.